IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK 17-40464 |
| | ) | |
| STACEY L. RENNER, | ) | CH. 7 |
| | ) | |
| _____Debtor._____ | ) | |
| THOMAS PINKELMAN, | ) | ADV. PROC. 17-4040 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STACEY L. RENNER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Trial was held in Lincoln, Nebraska, on March 14, 2018, on the Plaintiff's complaint for nondischargeability of certain debts owed to the Plaintiff (Fil. #1). The Plaintiff and the Defendant both appeared pro se. Evidence was received, and this matter is now ready for decision. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(I).

*Factual Background*

In 2008, the Plaintiff began operating the Steel Steed Steakhouse & Saloon out of a property he owned in Elgin, Nebraska. For a time, the Defendant worked for the Plaintiff, and at some point, they began a personal relationship. The Defendant later ceased working for the Plaintiff and moved from the immediate area.

In or about August 2014, the Defendant came back to Elgin and agreed to again work for the Plaintiff. However, this time the parties formed two limited liability companies. Steel Steed Steakhouse & Saloon, LLC was the entity that owned and operated the business, and Steel Steed Properties, LLC owned the underlying real estate. According to the testimony, the Plaintiff and the Defendant each owned 50% of the membership interests in each limited liability company. The Defendant received her half of the membership interests in exchange for assuming half of the company debt. The Plaintiff indicated he retained a security interest in the Defendant's membership interests.

The Plaintiff retained the title of "president" of the companies, but all the day-to-day management of the restaurant was handled by the Defendant. For approximately the first year of operations under the limited liability company format, the Plaintiff handled the filing and payment

of the withholding taxes and sales taxes, based on financial information provided by the Defendant. The Defendant handled all of the other finances for the restaurant.

The Plaintiff asserts that in or about August 2015, he learned that the restaurant was in default by approximately $10,000.00 to a supplier for food and other supplies. He examined the records that the Defendant had prepared, but they appeared to be incomplete. The Plaintiff and the Defendant met to discuss the issues and the Defendant acknowledged that the restaurant was having cash flow difficulties. The Defendant also acknowledged that she was overwhelmed trying to keep the restaurant afloat and maintaining the books and records, so the parties agreed to use an outside bookkeeper. The Defendant began taking the records to the bookkeeper who would handle filings related to withholding taxes, sales taxes, and generation of financial reports. After a few months of that arrangement, the Plaintiff discovered that the sales and withholding tax filings were not being made on time and that no payments had been made on those obligations. The bookkeeper explained to the Plaintiff that she was not receiving the financial information timely from the Defendant, and, in any event, there was insufficient money in the bank account to make the payments. Eventually, both parties negotiated with the Nebraska Department of Revenue, the Internal Revenue Service, and the Nebraska Department of Labor – apparently as "responsible parties" under applicable tax law – and each made payments under their respective agreements. During this time, the personal relationship between the parties also fell apart. The parties closed the restaurant effective February 29, 2016.

### *The Plaintiff's Claims*

The Plaintiff asserts that the Defendant was "a fiduciary shareholder and officer" of the limited liability companies who "failed to protect and deposit Sales Taxes and Employer Withholding Taxes collected and held in trust for Nebraska Department of Revenue." He also asserts that she failed to file and pay unemployment taxes as well as withholding taxes collected and held in trust for the Internal Revenue Service. He believes that these failures resulted in the closure of the business. He further alleges that the Defendant took money and property from the limited liability companies for her own personal use and benefit. The money he believes she took from the company was in the form of fuel purchases the Defendant made with company funds. The property he believes she took was a mirror that had been hanging in the restaurant. The Plaintiff testified that he "foreclosed" on the Defendant's membership interests in the limited liability companies and seeks as damages half the operating expenses for the restaurant property through the date he foreclosed the Defendant's limited liability company interests. A summary of the damages for which the Plaintiff is seeking a nondischargeable judgment is as follows:

| | |
|---|---:|
| Still due to Nebraska Department of Revenue as of 3/1/18 | $ 1,846.88 |
| Amount of state refund seized from T. Pinkelman | 576.00 |
| T. Pinkelman settlement to Nebraska Department of Revenue | 2,300.00 |
| Nebraska unemployment paid by T. Pinkelman | 69.45 |
| S. Renner gas purchases | 2,583.44 |
| S. Renner utility payments | 1,031.75 |
| Mirror | 400.00 |
| Property taxes | 842.84 |
| Employment taxes paid by T. Pinkelman to IRS | 4,119.26 |
| Employment taxes still due to IRS 3/17/18 | 6,347.94 |
| One-half of ownership expenses | 897.62 |
| TOTAL | $21,015.18 |

### *The Defendant's Position*

For her part, the Defendant asserts that she was simply trying to do her best to keep the restaurant operating. She stated that both parties knew the restaurant was struggling financially and that she was brought in to try to turn it around. She spent virtually all of her time at the restaurant trying to make it work financially. She found it overwhelming, but did her best. The Defendant admits that she did use the restaurant's checking account to make the fuel purchases that the Plaintiff has included as part of his request for damages. However, she states that she only used company funds to purchase fuel when she was driving to pick up supplies on behalf of the company, such as from Sam's Club and OfficeMax in Norfolk, Nebraska. Those trips were often 90 miles or more round trip, and she did so a few times per week. The Defendant also acknowledged removing a mirror at or about the time the restaurant closed and giving it to a friend. She testified that the mirror did not belong to the restaurant, but belonged to the Budweiser representative who told her that she could take it.

The Defendant also admits to using company funds as asserted by the Plaintiff to pay certain utility payments at the house she was living in which was owned by the Plaintiff. She understood that her obligation for utilities was to split them equally with the Plaintiff, as he did stay in the house at times. Further, the Defendant used the house as a "home office" for her duties with respect to the restaurant and did the laundry for the restaurant (linens, etc.) at the house. Therefore, she felt that it was appropriate to use company funds at times to pay the utility bills.

Finally, the Defendant notes that the Plaintiff was an authorized user of all of the company bank accounts. He had access to the bank accounts and financial records of the company at all times, and should not have been surprised at the financial condition of the company.

### *Discussion*

The statutory exceptions to discharge in bankruptcy are narrowly construed against the creditor to effectuate the fresh start policy of the Bankruptcy Code. *Owens v. Miller (In re Miller)*, 276 F.3d 424, 429 (8th Cir. 2002). Accordingly, a creditor opposing discharge of a debt carries the

burden of proving the debt falls within an exception to discharge. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993) (per curium). Preponderance of the evidence is the standard of proof that applies to discharge exceptions under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Where an objecting creditor fails to establish every element under § 523(a), the indebtedness at issue is dischargeable. *Id.*

The Plaintiff appears to be proceeding under 11 U.S.C. § 523(a)(4) to except from discharge certain debts he alleges are owed to him due to the Defendant's fraud or defalcation while acting in a fiduciary capacity. To prevail under § 523(a)(4), the Plaintiff must establish that (1) a fiduciary relationship existed between the Plaintiff and the Defendant and (2) that the Defendant committed fraud or defalcation in the course of that fiduciary relationship. *See Hasley v. Irons (In re Irons)*, 2017 WL 943897, at *4 (Bankr. D. Neb. Mar. 9, 2017) (citing *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001)).

Whether a relationship is a fiduciary relationship under § 523(a)(4) is a question of federal law. *Arvest Mortg. Co. v. Nail (In re Nail)*, 680 F.3d 1036, 1039 (8th Cir. 2012) (citing *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997)). The fiduciary relationship required under this section is more narrowly defined than that under the general common law. *Shahrokhi*, 266 B.R. at 707. "[T]he broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context.*" Reshetar Sys., Inc. v. Thompson (In re Thompson)*, 458 B.R. 504, 508 (B.A.P. 8th Cir. 2011) (quotation omitted).

> "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose. *See Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004) ("fiduciary" used in a strict and narrow sense in § 523(a)(4), and fiduciary status must pre-date the debt); *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878–79 (8th Cir. 1985) (holding that for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship). The substance of a transaction, rather than the labels assigned by the parties, determines whether there is a fiduciary relationship for bankruptcy purposes. *Nail*, 680 F.3d at 1040 (quoting *Long*, 774 F.2d at 878–79).

*Irons,* 2017 WL 943897, at *4.

"A technical trust is one imposed by statute or common law." *Aslakson v. Freese (In re Freese)*, 472 B.R. 907, 923 (Bankr. D.N.D. 2012) (footnote omitted). "An express trust is created by a direct, positive, and objectively-manifested act under contract, or under an instrument such as a deed or will." *Id.* (citation omitted). "Typically, the parties to an express trust prepare a declaration of a trust, define a trust res and outline specific duties and responsibilities of the trustee." *Id.* (footnote omitted).

It is unclear whether the Plaintiff is attempting to assert the existence of a technical trust imposed by law, or an express trust. The Plaintiff did offer into evidence the employment agreement between the parties, but that agreement does not mention any trust relationship and does not establish a technical or express trust.

The Plaintiff also appears to assert that as a member and manager of the restaurant limited liability company, the Defendant owed a fiduciary duty to the other member. However, the Plaintiff did not introduce into evidence any limited liability company organizational documents or supply any law to support this contention. I find that the duties one limited liability company member may owe to another are not "fiduciary" duties contemplated by § 523(a)(4). Although the Nebraska Uniform Limited Liability Company Act imposes the fiduciary duties of loyalty and care upon the members of a member-managed limited liability company, including the duty "to account to the company and to hold as trustee for it any property, profit, or benefit," Neb. Rev. Stat. § 21-138(a) and (b), this is not the type of trust contemplated by § 523(a)(4). While the statute uses trust-type language, it envisions a trust that would arise as a result of a member's failure to account. That type of trust is one that arises from a member's wrongdoing, which is not an express or technical trust as required by § 523(a)(4) and cannot support a finding of fiduciary capacity under that section. *Cody Farms, Inc. v. Deerman (In re Deerman)*, 482 B.R. 344, 373 (Bankr. D.N.M. 2012). *See also Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1372 (10th Cir. 1996) (stating "[n]either a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability") (citations omitted).

Even if the Plaintiff had provided sufficient proof of the existence of a fiduciary relationship between the Plaintiff and the Defendant, the Plaintiff still had the burden to show that the Defendant committed fraud or defalcation in the course of that relationship. I find that the evidence failed to establish fraud or defalcation by a preponderance of the evidence. I find the Defendant's testimony was credible and that all the actions taken by the Defendant were for taken in a good-faith effort to operate the restaurant business as best she could. No evidence was presented to show that the Defendant personally benefitted from any of her actions or that any of the actions were taken with the intent to cause harm to either limited liability company or the Plaintiff. In fact, the evidence showed that the intent of the Defendant was at all times to benefit the restaurant. It is telling that she didn't even try to hide any of the expenditures of which the Plaintiff complains and the Plaintiff had access to all the records at all times. The Plaintiff was or should have been aware of every expenditure by the Defendant.  Accordingly, the Plaintiff's claim under § 523(a)(4) fails.[1]

---

[1]I also note that neither limited liability company is a party to this adversary proceeding. Some of the damage claims made by the Plaintiff are more properly claims by the limited liability company entities, not the Plaintiff individually.

Finally, I need not decide the amount of the indebtedness, if any, owed by the Defendant to the Plaintiff.[2] The Defendant's underlying bankruptcy case is a "no-asset" Chapter 7, and the Defendant has received her discharge. Since I have decided that the indebtedness, if any, is not excepted from discharge, there is no reason to quantify the debt.

IT IS ORDERED: The Plaintiff's complaint seeking to except from discharge certain indebtedness he believes is owed by the Defendant is dismissed. Separate judgment will be entered.

DATED:  April 2, 2018.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Stacey L. Renner
    *Thomas Pinkelman
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[2]A denial of a request to except a debt from discharge does not mean a debt never existed. It may very well be true that the Defendant owed a pre-petition debt to the Plaintiff – under contract, contribution, or other theory. This order simply determines that the debt, if any, is not excepted from discharge.